**Ralph F. NISHIYAMA and wife, Gabrielene Nishiyama, as surviving parents and next-of-kin of Kathy Jane Nishiyama, deceased**

v.

**DICKSON COUNTY, TENNESSEE; a political subdivision of the State of Tennessee, Dowell (Doyle) Wall and Carroll Fizer.**

No. 82–3952.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 15, 1983.

Richard H. Batson, Clarksville, Tenn., John T. Conners, Jr., and Kenneth H. King, Jr., Nashville, Tenn., for plaintiffs.

Douglas Fisher, R.B. Parker, Jr., and Thomas A. Higgins, Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

This is an action pursuant to 42 U.S.C. §§ 1983 and 1985. The plaintiffs allege that the defendants deprived Kathy Jane Nishiyama, their daughter, of rights secured to her by the United States Constitution. Named as defendants are Dickson County, Tennessee; Dowell (Doyle) Wall as Sheriff of Dickson County; and Carroll Fizer as Deputy Sheriff of Dickson County. The defendants have moved that the complaint be dismissed for failure to state a claim. Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the defendants' motion shall be granted.

Taking the plaintiffs' pleadings as true, they allege that on November 16, 1981, Charles Edward Hartman was a prisoner at the Dickson County Jail serving a sentence for burglary. Dickson County had apparently accepted custody of him pursuant to a contract with the State. *See* Tenn.Code Ann. §§ 41–8–101 to 116 (1982), a mechanism whereby nondangerous felons are housed in county jails rather than in state institutions.

The plaintiffs allege that the defendants knew or should have known that Hartman was a dangerous man who had assaulted a young woman in the past.[1] Despite their alleged knowledge, the defendants placed Hartman on trusty status.[2]

Having made him a trusty, Wall and Fizer adopted a policy of allowing Hartman to have unsupervised use of Dickson County patrol cars to perform personal and official tasks for their benefit as well as his own. The plaintiffs allege that this policy had been in effect several months as of the night of the murder. Dickson County is made a defendant to this action because its officials supposedly knew of this custom or policy, and the danger it posed to the public, but did nothing to stop it.

On the evening of November 16, 1981, Deputy Fizer is alleged to have instructed Hartman to drive him to his farm. Night had fallen, and Fizer's farm was located several miles from the Dickson County Jail. Upon arriving at his farm, Fizer turned sole possession of the patrol car over to Hartman. There is no allegation as to what instructions, if any, Fizer gave Hartman.

The complaint alleges that after leaving Fizer's farm, Hartman proceeded to prowl the highways of Dickson, Houston, and Montgomery Counties. He stopped several motorists by flashing the patrol car's blue lights. Montgomery County officials were informed that a Dickson County Sheriff's car was stopping motorists in their county. They notified the Dickson County dispatcher. The dispatcher notified Wall and Fizer, neither of whom did anything.

**1.** The plaintiffs allege that defendant Wall was or should have been alerted to Hartman's violent nature by the latter's past conduct, documented psychological makeup, personality, and prior assault history. They further allege that Hartman was unworthy of trust, and so dangerous that he should have been kept constantly confined. The plaintiffs do not allege, however, that Hartman's burglary conviction placed him in a class of felons which rendered him ineligible to participate in various rehabilitation programs. *See* Tenn.Code Ann. §§ 39–1–703 (1982); 41–21–209 (1982). Indeed, the statute under which Hartman was apparently transferred to the Dickson County Jail only permits nondangerous felons to be so assigned. *See* Tenn.Code Ann. § 41–8–102 (1982).

**2.** The parties have not directed the court to any statute, ordinance, or regulation governing the trusty system in this state nor has the court been able to locate one. In fact, *Inmates, Washington City Jail v. England,* 516 F.Supp. 132 (E.D.Tenn.1980) holds that conferral of a trusty status rests solely within the discretion of jail administrators. *England,* 516 F.Supp. 132, 141 (E.D.Tenn.1980), *aff'd mem.,* 659 F.2d 1081 (6th Cir.1981).

Some 10 hours after he had left the jail, Hartman returned. It is the plaintiffs' contention that in the interim he had pulled their daughter's car over by flashing the patrol car's lights and then murdered her. Her death, they assert, was proximately caused by the gross negligence of the defendants, specifically their acts of placing Hartman on trusty status and allowing him to have unsupervised use of a patrol car.

The fundamental question presented by this case is whether the defendants, while acting under color of state law, deprived the plaintiffs' decedent of rights secured to her by the Constitution and laws of the United States, i. e., was she deprived of her life, under color of state law, without due process of law. Thus, was the plaintiffs' daughter deprived of a federal right as distinguished from a state right? Was she deprived of any right protected or secured by the Constitution or laws of the United States? *See Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, 1506 (1945); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Only specific acts done "under color of law" and then *only those acts* which deprived a person of some right secured by the Constitution or laws of the United States state a cause of action under § 1983. *See, e.g., Screws*, 325 U.S. 91, 109, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495, 1507 (1945).

■ Turning first to the question of whether the acts which deprived the decedent of her life were performed "under color of state law," we find an allegation that the defendants, individuals and the county, made Hartman a "trusty," entrusted him with a sheriff's car, and permitted him to run errands as a trusty. On the occasion in question he was entrusted with the vehicle after delivering a deputy sheriff to his home. Thereafter, Hartman played sheriff and killed the plaintiffs' daughter. Insofar as the activities of Hartman are concerned, they must be measured against the requirement that they be the activities of a bona fide official performed in the furtherance of his lawful duties or the activities of a bona fide official purporting or pretending to perform lawful acts before they can be characterized as actions under

color of state law. *Screws*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, 1508 (1945). Obviously, Hartman was not a county official and he was not performing any official duties. Clearly he cannot be made an official by estoppel or by the extension of the doctrine of apparent authority under the theory of agency. "Color of law" refers specifically to the actions of officials and not pseudo officials or officials by estoppel. It does not refer to personal and non-official pursuits. *Id.*

But this does not end the necessary examination. We must examine the actions of the officials, i.e., the sheriff and his deputy.

■ There is no allegation that the "trusty" system is not a valid tool in the correction system of the state and counties. There is not an assertion that the system was improperly established or maintained. There is an allegation that, as to this defendant, the system was improperly implemented. The state statute authorizing the transfer of prisoners to counties for housing classifies the prisoners as nondangerous felons. Tenn.Code Ann. § 41–8–102. The complaint alleges:

(1) Hartman had been convicted of burglary.

(2) Hartman had a prior criminal record.

(3) Hartman had previously assaulted a young lady.

(4) "His documented psychological make-up, personality and character was such that he would present an unreasonable risk and danger to the public if he were permitted to leave the jail confinement and [be] given possession" of a patrol car.

It is beyond question that the decision to make Hartman a "trusty," and give him the privileges incident thereto was made under "color of law" since it was a decision made as an official act. However, having so stated, is there any duty to the plaintiffs' daughter or any causal connection between the decision to make Hartman a "trusty" and the resulting death in the sense of color of law? Hartman was granted limited liberty for specific acts and conduct. His individual acts for his personal pur-

suits were not under color of law of the sheriff or his deputy. The decision to give him limited liberty was official action. Hartman's individual actions cannot be characterized as official actions. However pretermitting this question, the plaintiffs have failed to allege a constitutional deprivation of rights. No specific provision of the Constitution or laws of the United States is alleged to be applicable except the 14th Amendment or due process. Violation of local law does not activate the 14th Amendment. The fact that a murder is committed by a private or state official does not activate the 14th Amendment. The due process clause of the 14th Amendment has been discussed by the Supreme Court of the United States on many occasions, but when invoked, it specifically protects a recognized right or interest identified in the Constitution or by law. *Paul,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405, 413 (1976); *accord Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711, 733 (1977). This is not a situation where after being arrested on a valid warrant there was a trial by ordeal. *See Screws,* 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, 1505 (1945). Nor is it a case where there is a claim of a violation of the 8th Amendment. Nor is it an instance arising out of a factual background previously determined by stare decisis as being one which meets the dignity and stature of a constitutional violation requiring procedural due process. Here Hartman was negligently or recklessly granted a limited liberty interest by a county official. He allegedly committed a random murder. He was not carrying out any state or county procedure. He was engaged in separate individual acts for which there is an adequate state remedy under traditional tort law principles. The alleged misuse of the "trusty system" was not so egregious as to infer a deprivation of constitutional rights. Here there was no alleged malice, but only negligence and possible recklessness. There was no abuse of power. Here, also, there is no allegation of fact indicating that any official approved or knowingly acquiesced in the conduct of Hartman. *See Hays v. Jefferson County,*

*Ky.,* 668 F.2d 869, 874 (6th Cir.1982). There has been no deprivation of a constitutional right.

Even if we were to hold that all the actions complained of were performed under color of state law and that those actions deprived Kathy Nishiyama of her life, we could not hold that the deprivation in this case occurred without due process of law. We reach this conclusion based upon our interpretation of the United States Supreme Court's holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

To properly apply *Parratt,* one must carefully identify what that case did and did not hold. *Parratt* did hold that § 1983 itself does not contain an intent requirement, i.e., a cause of action can be brought under that statute for a negligent deprivation of rights. *Id.* at 534, 101 S.Ct. at 1912, 68 L.Ed.2d at 427. That holding accords with the Court's pronouncement in *Monroe v. Pape* that "Section 1979 (1983) should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505 (1961). *Parratt* did not hold that a person is deprived of his rights without due process every time a state official negligently deprives him of his life, liberty, or property. On the contrary, as we shall explain below, so long as there is an adequate postdeprivation remedy in the state courts, *Parratt* holds that anything short of an intentional deprivation of those rights protected by the 14th Amendment will not constitute a deprivation of due process. This is not to say that an intentional deprivation will in every case constitute a violation of due process, *see Paul,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), but intent is at least a threshold requirement.

The due process clause of the 14th Amendment assured the plaintiffs' daughter that the state would not take her life from her without due process of law. Due process requires that one be granted an opportunity to be heard "at a meaningful time and in a meaningful manner." *Par-*

*ratt*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420, 432 (1981) (*citing Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In *Parratt*, the Court summarized its cases examining what process was due when a deprivation of property was involved as follows:

> These cases recognize that either the necessity of quick action by the state or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the state's action at some time after the initial taking, satisfy the requirements of procedural due process.

*Id.* 451 U.S. at 539, 101 S.Ct. at 1914, 68 L.Ed.2d at 431. The Court went on to find that it would have been impractical to grant the plaintiff a predeprivation hearing in the case before it since his loss was the "result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Id.* 451 U.S. at 541, 101 S.Ct. at 1915, 68 L.Ed.2d at 432. The plaintiffs have stressed in their briefs and at oral argument that the loss in this case was caused by an established state procedure. When the Court spoke of a loss "resulting" from an established state procedure, however, it meant that the procedure itself must have caused the loss, not that it created a state of affairs that made it possible for a third person to randomly cause the loss.

■ Such an interpretation of *Parratt* is supported both by logic and the language of subsequent precedent. Logically, it is impossible for the state to ever predict when a deprivation will occur unless the actions taken by its agents were intended to cause the deprivation at issue. There need not be a subjective intention to deprive the plaintiff of a right unconstitutionally, but there must at least be an objective awareness that the actions taken will deprive persons of their life, liberty, or property. The Court clarified this point in *Logan v. Zimmerman Brush Co.*, 455 U.S.

422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In that case, the plaintiff brought a § 1983 claim on the grounds he had been deprived of his property without due process of law. He had filed an employment discrimination claim with the Illinois Fair Practice Commission. That body had failed to convene a fact-finding conference within the statutory time period. The Illinois Supreme Court found the time period to be a jurisdictional prerequisite which barred the plaintiff from pursuing his claim. Citing *Parratt*, the appellees argued that the plaintiff had not been denied due process since he could sue the members of the Commission for negligence in state court. The U.S. Supreme Court did not agree. It distinguished *Parratt* by noting that "Here, in contrast, it is the state system *itself* that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference— whether the Commission's action is taken through negligence, maliciousness, or otherwise." *Id.* 455 U.S. at 436, 102 S.Ct. at 1158, 71 L.Ed.2d at 278 (emphasis added).

Once one accepts that the key to determining when a predeprivation hearing must be held to satisfy due process is whether the state action was intentional or not, it is obvious that there is no principled basis on which the rule in *Parratt* can be restricted solely to deprivations of property. It is just as impossible to predict when an unintentional deprivation of life or liberty will occur as it is when property is the interest at stake.

■ Here there is no allegation that the trusty system is not a valid tool in the correction system of the state and counties. There is no assertion that the system was improperly maintained. There is an allegation that it was improperly implemented, but there is no allegation that the improper implementation was harmful in itself. What the plaintiffs really allege is that the actions the defendants took made it possible for Hartman to murder their daughter. That act of murder, however, was a random act. The only practical, indeed the

only possible remedy any court can give these plaintiffs is one after the fact. Since Tennessee provides them with the opportunity to secure such a remedy, *see* Tenn. Code Ann. § 29–20–205 (1980), the plaintiffs have not been denied due process.

To summarize, the action taken by the defendants to further their personal objectives were not under color of state law. Those actions taken by the defendants which were under color of state law did not deprive the plaintiffs' decedent of her life in the constitutional sense. Even if we were to hold that the defendants' actions were under color of state law and that they did deprive the decedent of her life, the deprivation was not without due process, given the remedy available in the state courts.

It only remains to decide the plaintiffs' equal protection claim. We do not think that the defendants have or can allege that Kathy Nishiyama was a member of a class which was placed in any greater peril by the defendants' acts and omissions than the public at large. Even if the plaintiffs can prove the existence of such a class, they have not alleged sufficient class-based animus on the part of the defendants toward that class to state a cause of action. Thus, we find there has been no denial of the equal protection of the laws, nor has there been any conspiracy to deprive anyone of the equal protection of the laws.

For the reasons set forth above, this case is dismissed. An appropriate order will be entered.