**Sheryl BULLARD**

v.

**Joe VALENTINE.**

**No. CIV–2–84–56.**

United States District Court,
E.D. Tennessee,
Northeastern Division.

June 18, 1984.
Report and Recommendation
April 27, 1984.

James T. Bowman, Anderson & Bowman, Johnson City, Tenn., for plaintiff.

Mark S. Dessauer and William C. Bovender, Kingsport, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, District Judge.

This is a civil rights action, 42 U.S.C. § 1983, in which the plaintiff, Sheryl Bullard, alleges that the defendant, Carter County Deputy Sheriff Joe Valentine, acting under color of law, beat, shot, and killed her husband while attempting to arrest him on a misdemeanor charge. She claims that this constituted an intentional deprivation of his life without due process of law as well as a violation of his Fourth Amendment right to be secure in his person against unreasonable seizures.

The defendant has moved to dismiss, Rule 12(b)(6), Federal Rules of Civil Procedure, on the theory that the plaintiff has failed to state a claim for a deprivation without due process of law because the Tennessee Wrongful Death statute provides a meaningful and adequate remedy. See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

This motion compels this Court to grapple with the problem common to all lower federal courts of interpreting the reach of the Parratt decision. Parratt held that a prisoner, whose hobby kit had been negligently lost by prison authorities, had not stated a cause of action under the Fourteenth Amendment for a deprivation of property without due process of law. The Court found that, although a person acting under color of law had deprived the plaintiff of property, no rights, privileges or immunities secured by the Constitution were implicated. This was because the deprivation had not occurred as a result of some established state procedure and because Nebraska tort law provided a remedy sufficient to satisfy the requirements of due process.

The Parratt decision has given birth to an "adequate state law remedy" doctrine used to deny a federal forum to certain actions claiming violations the Fourteenth Amendment due process clause which pre-viously would have been litigated under 42 U.S.C. § 1983. One problem facing the lower courts is whether the Parratt decision was intended to be limited to cases involving negligent deprivations of property or whether it was intended to reach life and liberty interests also protected under the due process clause. This Court must agree with those courts that have found no logical reason why it should not encompass life and liberty as well as property. See, e.g. State Bank of St. Charles v. Camic, 712 F.2d 1140 (7th Cir.1983); Nishiyama v. Dickson County, Tenn., 573 F.Supp. 200 (M.D.Tenn. 1983).

While this Court can agree with those courts that have interpreted Parratt to encompass at least negligent deprivations of life, liberty and property, it is by no means certain that intentional deprivations of these interests fall within Parratt's rule. Parratt dealt with a random and unauthorized dereliction of duty by a state official at the lowest level, not an intentional deprivation or one pursuant to some state procedure. Many of the courts that have attempted to distinguish Parratt from the facts of the cases before them have focused on this aspect of Parratt. See Haygood v. Younger, 718 F.2d 1472, 1480 (9th Cir.1983); Keniston v. Roberts, 717 F.2d 1295, 1301 (9th Cir.1983); Scott v. Greenville County, 716 F.2d 1409, 1421, n. 17 (4th Cir.1983). In deciding whether Parratt's "adequate state law remedy" doctrine applies, this Court would agree with Judge Clure Morton that "intent is at least a threshold requirement." Nishiyama, supra, at 203.

A Magistrate in this district has carefully reviewed the many ways lower courts have interpreted the Parratt decision and recommended that this Court align itself with those that have interpreted Parratt to address procedural due process claims but not those asserting substantive due process rights.

"Substantive due process" is a shorthand term for those substantive rights that the Supreme Court has interpreted the due process clause of the Four-

teenth Amendment to confer. *See Brown v. Brienen*, 722 F.2d 360, 366 (7th Cir. 1983). These rights have been found either specifically or by implication in the Bill of Rights and the "privileges and immunities" clause of the Fourteenth Amendment. For example, as citizens, we enjoy a substantive right to pass freely from state to state, to carry on interstate commerce, to contract, to own property, to engage in life's common occupations, to acquire useful knowledge, to marry and rear children, to worship God according to the dictates of conscience, to be free from illegal searches and seizures of our persons, and to be free from unnecessary violence at the hands of law enforcement officers. The due process clause has been found to protect the sanctity of the person and the family from arbitrary and irrational state actions which abridge these fundamental rights and "shock the conscience."

The Constitution cannot and does not protect us from the random and accidental type of harm suffered in the *Parratt* case. Nor can this type of mischance, even when life and liberty interests are jeopardized, abridge our traditional notions of fundamental fairness and shock the conscience.

█ While this Court wishes it could draw a clear line between those deprivations of life, liberty and property that do not rise to the level of constitutional claims and those that implicate substantive due process rights redressable in the federal courts, it cannot do so. However, it is confident that the facts of the instant case bring it within the protection of the Constitution. This case alleges precisely the type of abuse of state police powers that 42 U.S.C. § 1983, was intended to redress.

While the *Parratt* case has been read as a signal that federal courts may close their doors to certain due process claims that can be remedied in state courts, there is considerable confusion about the scope and reach of this opinion. Unless and until the Supreme Court specifically articulates otherwise, claims such as the instant one, in-

volving intentional violations of substantive rights, should remain in the federal courts.

Accordingly, the report and recommendation of the United States Magistrate is adopted and approved. The defendant's motion to dismiss is DENIED.

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate pursuant to 28 U.S.C. § 636(b) and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the defendant's pending motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Federal Rules of Civil Procedure.[1]

This is an action brought pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. The plaintiff alleges that on February 10, 1983, the defendant, a Carter County deputy sheriff, while in the process of attempting to arrest her husband on a misdemeanor charge used excessive and unnecessary force by beating, shooting and killing him. The plaintiff contends that the conduct of the defendant constituted an intentional, willful and wanton deprivation of the deceased's right to be secure in his person and against unreasonable seizure under the Fourth and Fourteenth Amendments to the Constitution and his right not to be deprived of his life without due process of law as provided by the Fourteenth Amendment.

The defendant contends that the plaintiff has failed to state a claim upon which relief can be granted, relying on the decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

In *Parratt*, an inmate in a Nebraska prison brought an action pursuant to 42 U.S.C. § 1983 alleging that he had been deprived of property without due process of law under the Fourteenth Amendment when prison officials allegedly negligently lost a $23.50 hobby kit which the plaintiff

---

**1.** The plaintiff has failed to respond to such motion in a timely manner and, thus, is deemed to have waived any response thereto. Local Rules 12(b); 11(f).

had ordered through the mail. *Id.,* at 529, 101 S.Ct. at 1910. The Court in *Parratt* first addressed a question which had caused considerable dispute in the lower federal courts: whether mere negligence would support a cause of action under § 1983? Noting that nothing in the language or statutory history of § 1983 limited the statute solely to intentional deprivations of constitutional rights, the Court initially determined that § 1983 did not require intentional conduct. *Id.,* at 534–35, 101 S.Ct. at 1912–13. The Court then went on to consider whether the plaintiff had stated a valid due process claim.

> Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation. Standing alone, however, these three elements do not establish a violation of the Fourteenth Amendment. Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law." *Baker v. McCollan,* 443 U.S. [137] at 149, 99 S.Ct. [2689], at 2695 [61 L.Ed.2d 433]. Our inquiry therefore must focus on whether the respondent has suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process.

*Id.,* at 536–37, 101 S.Ct. at 1913–14. The Court ultimately held that the plaintiff had stated no cause of action under the Due Process Clause. The Court noted that although the plaintiff had been deprived of property under color of state law, the deprivation did not occur as a result of an established state procedure. In fact, the deprivation occurred as a result of the failure of state agents to follow established procedure. There was no contention that the procedures themselves were inadequate nor was it contended that it was practicable for the State to provide a predeprivation remedy. The Court emphasized that the State of Nebraska had provided the plaintiff with a post deprivation means by which he could redress the deprivation. *See* Neb. Rev.Stat. § 81–8, 209 *et seq.* (1976). Thus, the Court concluded that the post deprivation remedies in Nebraska were sufficient to fully compensate the plaintiff for the property loss he suffered, and were sufficient to satisfy the requirements of due process. *Id.,* at 543–44, 101 S.Ct. at 1916–17.

The defendant contends that the plaintiff in this case also has an adequate state law remedy through the Tennessee Wrongful Death statute, T.C.A. § 20–5–110.

Subsequent to *Parratt,* lower federal courts have disagreed sharply over how far the decision actually extends. Carried to its logical conclusion, the decision in *Parratt* could ultimately limit many claims previously considered due process violations to state courts due to the existence of parallel state tort remedies. Several lower federal courts have interpreted the adequate state law remedy doctrine found in *Parratt* to extend significantly beyond the negligent deprivation of a property interest setting. *See, e.g., Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981) (*Parratt* extended to alleged intentional assault committed by a state official); *Nishiyama v. Dickson County, Tenn.,* 573 F.Supp. 200 (M.D.Tenn.1983) (*Parratt* extended to alleged negligent deprivation of life claim); *Barnier v. Szentmiklosi,* 565 F.Supp. 869 (E.D.Mich.1983) (*Parratt* extended to alleged intentional deprivation of liberty); *Meshkov v. Abington Township,* 517 F.Supp. 1280 (E.D.Pa.1981) (*Parratt* extended to negligent deprivation of life claim); *Sheppard v. Moore,* 514 F.Supp. 1372 (M.D.N.C.1981) (*Parratt* extended to intentional deprivation of property claim). No cases have been cited, nor is the undersigned aware of any, in which the *Parratt* doctrine has been extended to a claimed

intentional deprivation of life as is alleged in this case.[2]

Courts which have limited the *Parratt* decision have generally done so on one of three grounds. First, several courts have decided that *Parratt* cannot be extended beyond deprivations of property interest to deprivations of liberty interests. *See, e.g. Brewer v. Blackwell,* 692 F.2d 387, 394–95 (5th Cir.1982); *Wakinekona v. Olim,* 664 F.2d 708, 715 (9th Cir.1981), *rev'd on other grounds,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). This position is supported by Justice Blackmun's concurrence in *Parratt,* which indicates his understanding that the decision would not extend to a life or liberty interest. *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917–18. Other courts have pointed out that there is no principled basis on which the rule in *Parratt* can be restricted to deprivations of property. *See Nishiyama,* 573 F.Supp. at 204. *See also, Haygood v. Younger,* 718 F.2d 1472, 1479–80 (9th Cir.1983).

A second group of courts have refused to extend *Parratt* to cases involving intentional, rather than merely negligent, deprivations of protected interests. *See, e.g., McCrae v. Hankins,* 720 F.2d 863 (5th Cir. 1983); *Peters v. Township of Hopewell,* 534 F.Supp. 1324 (D.N.J.1982); *Tarkowski v. Hoogasian,* 532 F.Supp. 791 (N.D.Ill. 1982); *Parker v. Rockefeller,* 521 F.Supp. 1013 (N.D.W.Va.1981). *But see, Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983). It is apparently the law of the Sixth Circuit that at least with respect to alleged property deprivations under the due process clause *Parratt* does not distinguish between negligent and intentional conduct.

As we read *Parratt,* the principle being applied does not turn on the question of whether the claimed constitutional tort

affecting property is caused by intentional conduct or negligent conduct or is based on strict liability..... The reasoning of *Parratt* appears to extend at least to all section 1983 cases claiming a procedural due process injury to a property interest without regard to whether at common law a plaintiff would have sued in tort or contract and would have based his action on intent, negligence or strict liability.

*Vicory,* 721 F.2d at 1065. However, it is far from clear that the Sixth Circuit would extend this logic to an alleged intentional deprivation of a life interest. In passing, the undersigned notes that even the *Nishiyama* decision, on which the defendant relies, expressed in dictum reservations about extending *Parratt* that far. The court's language was as follows:

... so long as there is an adequate post deprivation remedy in the state courts, *Parratt* holds that anything short of an intentional deprivation of those rights protected by the 14th Amendment will not constitute a deprivation of due process. This is not to say that intentional deprivation will in every case constitute a violation of due process, see *Paul* [*v. Davis* ], 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), but intent is at least a threshold requirement.

*Nishiyama,* 573 F.Supp. at 203.

Finally, a third group of cases have distinguished *Parratt* on the grounds that it was a case involving only procedural due process and has no applicability to claimed violations of substantive due process. *See, e.g., Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir.1981); *Begg v. Moffitt,* 555 F.Supp. 1344 (N.D.Ill.1983); *Elam v. Montgomery County,* 573 F.Supp. 797 (S.D.Ohio

**2.** The defendant contends that the plaintiff has not properly alleged an intentional deprivation since there is no allegation that the defendant was acting in accordance with any established state procedure. *See* defendant's Brief in Support of Motion to Dismiss, at 4. Rather, the defendant argues, the defendant's alleged acts were solely the random and unauthorized acts of a state official. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. While the defendant's definition

of "intentional" might apply with respect to the liability of Carter County or some other governmental entity under whose authority the defendant was acting, it cannot apply to the individual defendant in this case. The individual defendant was allegedly acting intentionally. As far as the defendant's individual intent or lack of it is concerned, it is irrelevant whether or not he was following an established state procedure.

1983); *Schiller v. Stangis*, 540 F.Supp. 605 (D.Mass.1982). Procedural due process involves those claims which allege that the state has interfered with a protected liberty or property interest without providing adequate procedural safeguards. *See, e.g., Parratt*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420; *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Substantive due process involves those claims where, although no specific provision of the Bill of Rights is implicated, the state's conduct is such as to "shock the conscience" of the court and, thus, violate the due process clause. *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Johnson v. Glick*, 481 F.2d 1028, 1032–33 (2nd Cir.) (unprovoked attack by jail guard on pretrial detainee), *cert. denied sub. nom John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

> thoritatively formulated anywhere as though they were specifics. Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Justice Cardozo twice wrote for the Court, are "so rooted in the tradition and conscience of our people as to be ranked fundamental," *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, or are "implicit in the concept of ordered liberty." *Palko v. State of Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288.

*Supra*, 342 U.S. at 169, 72 S.Ct. at 208. A claim such as the plaintiff's, that the defendant, acting in the capacity of a peace officer, used excessive force and intentionally and wantonly killed the plaintiff's decedent while making a misdemeanor arrest undoubtedly alleges a violation of a fundamental protection against police violence, a violation which, if true, "shocks the conscience."

The undersigned is of the opinion that the *Parratt* rationale would not be extended to such claimed violations of substantive due process. Initially, it is noted that the

language of the decision itself specifically addresses only the question of procedural due process: "In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process." *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914. The decisions analyzed by the Court in reaching its holding in *Parratt* are uniformly procedural due process cases involving the necessity and timing of deprivation hearings. There is no mention of substantive due process except in the concurring opinions. In his concurrence, Justice Blackmun stated:

> I also do not understand the Court to intimate that the sole content of the Due Process Clause is procedural regularity. I continue to believe that there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process.

*Id.*, at 545, 101 S.Ct. at 1918. Justice Powell's concurrence stated a similar reservation. *Id.*, at 552–54, 101 S.Ct. at 1921–22. Without any indication from the Court that the *Parratt* doctrine should be extended to alleged violations of substantive due process, the undersigned agrees with those courts which have so refused to extend *Parratt*. The undersigned does not believe that the Court intended *Parratt* to be extended mechanically to every situation in which a due process claim is paralleled by a state tort remedy. The instant case, involving an alleged intentional deprivation of life under color of state law and implicating substantive due process would apparently represent the furtherest expansion to date of the *Parratt* decision.

■ In addition, though the parties have not briefed the issue, and the undersigned does not address it, the plaintiff may have stated a Fourth Amendment claim independent of the substantive due process claim.[3]

**3.** *Parratt* only considered whether under the facts of that case the plaintiff had stated a claim

under the Due Process Clause of the Fourteenth Amendment *simpliciter*. *Parratt*, 451 U.S. at

The Fourth Amendment establishes "the right of the people to be secure in their *persons* ... against unreasonable searches and seizures." This shield protects an individual not only from an arrest without probable cause or an unreasonable search of his property, but also protects the individual's physical integrity. There is authority for the position that injuries arbitrarily inflicted by the police while conducting an arrest are cognizable under the Fourth Amendment. *Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir.1970).

In light of the foregoing, it is the recommendation of the undersigned that the defendant's motion to dismiss be DENIED.[4]

Respectfully submitted,
/s/   Robert P. Murrian
Robert P. Murrian
UNITED STATES MAGISTRATE

536, 101 S.Ct. at 1913. As such, *Parratt* has no application to those specific provisions in the Bill of Rights, such as the Fourth Amendment, which are applicable to the States by virtue of the adoption of the Fourteenth Amendment. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

4. Any objections to this report and recommendation must be filed within 10 days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947–950 (6th Cir.1981).