**Linda L. FRYE, Individually and as Personal Representative of the Estate of Karrie A. Darnell, deceased, and Thomas C. Darnell, Plaintiffs,**

v.

**The TOWN OF AKRON, and James A. Moore, Defendants.**

Civ. No. F 90–157.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 8, 1991.

 

Wilford A. Hahn, Esteban R. Callejas; Matheny, Michael, Hahn & Bailey, Huntington, Ind., for plaintiffs.

Steven P. Polick; Judge & Knight, Ltd., Munster, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on motion to dismiss filed by the defendants on December 24, 1990. Plaintiffs responded to the motion on January 11, 1991 and defendants replied to plaintiffs' response on February 4, 1991.

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of the plaintiff's complaint as true. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980). The complaint must be considered in the light most favorable to the plaintiff and every doubt must be resolved in the plaintiff's favor. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221 (7th Cir.1983). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nonetheless, a complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir.1986). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984).

## Discussion

On August 17, 1988 the Decedent, Karrie A. Darnell, was riding on the back of a

motorcycle driven by Scottie Shepherd. At about 12:25 a.m. the defendant James Moore, who was the Deputy Marshal of the Town of Akron, observed the motorcycle crossing the center line of the highway on two or three occasions. At that time, Deputy Moore attempted to stop the motorcycle. After the motorcycle failed to stop, Deputy Moore began to chase the motorcycle. The chase proceeded at speeds in excess of 90 miles per hour over winding roads at night. Deputy Moore's vehicle struck the motorcycle, forcing the motorcycle off the road and causing the motorcycle to strike a fence. Karrie Darnell died as a result of the accident.

Plaintiffs, Karrie Darnell's parents[1], have filed a two-count complaint under 42 U.S.C. § 1983. Count I asserts a Fourth Amendment claim against Deputy Moore, alleging that he engaged in excessive force when he seized the Decedent. In the alternative, plaintiffs allege that Deputy Moore violated the Decedent's Fourteenth Amendment substantive due process rights. Count II asserts that the Town of Akron violated the Decedent's civil rights by failing to train Deputy Moore. Defendants have moved to dismiss plaintiffs' complaint for failure to state a claim. In their motion, defendants assert that Deputy Moore's actions did not constitute a seizure for the purposes of the Fourth Amendment, that Deputy Moore did not violate the decedent's Fourteenth Amendment rights, that plaintiffs have inadequately pled a claim against the Town of Akron, and that plaintiffs are not entitled to recover either hedonic damages or damages for their own pain and suffering.

First, defendants argue that the accident which took Karrie Darnell's life did not constitute a "seizure" for Fourth Amendment purposes. Defendants cite *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), to support their argument. In *Brower* the Court held that:

It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.* That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals [a police chase in which the suspect unexpectedly loses control of his car and crashes]. The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser has pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

109 S.Ct. at 1381.

In *Campbell v. White*, 916 F.2d 421 (7th Cir.1990), the Seventh Circuit applied *Brower* to a set of facts nearly identical to the ones in the case at bar. In *Campbell*, the parents of a deceased motorcyclist brought a § 1983 action against the police officer who struck and killed the motorcyclist during the course of a high-speed pursuit. The Seventh Circuit stated:

While it is clear that Officer White intended to stop Campbell and Miller for speeding and that White's actions caused, or contributed to, a "termination of [Campbell's] freedom of movement," there is no evidence whatsoever to suggest that White intended physically to stop or detain Campbell by running over him with his car in the event Campbell refused to pull over voluntarily. The collision between White and Campbell

---

**1.** Plaintiff Linda L. Frye is also the court-appointed personal representative of the estate of Karrie A. Darnell.

was not *"the means intentionally applied"* to effect the stop, but was rather an unfortunate and regrettable accident. 916 F.2d at 423.

■ Similarly, in the present case, there is no allegation that Deputy Moore intended to effect the stop of Shepherd's motorcycle by colliding with the motorcycle and forcing it off the road. In the absence of such intent, Deputy Moore's actions did not constitute a "seizure" for Fourth Amendment purposes and plaintiffs do not have a cause of action against Deputy Moore under the Fourth Amendment.

Defendants have also argued that the plaintiffs do not have a substantive due process claim against Deputy Moore. The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." The substantive aspect of the Due Process Clause has been used to incorporate some, but not all, of the substantive limitations to state and local government[2]. Specifically, substantive due process has been invoked to protect persons from conduct so arbitrary, egregious and shocking that it is impermissible regardless of any procedural safeguards provided[3].

In *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir.1990), the Court applied a substantive due process analysis to an excessive force case involving a police chase. The Court concluded that the plaintiff, who was accidentally shot in the jaw when police attempted to apprehend a robbery suspect, did not have a Fourth Amendment claim against the police officer because, pursuant to *Brower*, the officer did not "seize" the plaintiff because there was no intent to gain control over the plaintiff by shooting him. However, the Court assumed that claims of excessive force outside the context of seizure still may be analyzed under substantive due process principles, and held that "while Landol did not have a Fourth Amendment claim, he

was entitled to bring a claim under the Fourteenth Amendment alleging a deprivation of 'life, liberty, or property' without due process as a result of the police shooting." 906 F.2d at 796. Defendants question the validity of this holding and argue that under *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), all prearrest excessive force claims are to be analyzed exclusively under the Fourth Amendment reasonableness standard and not under the substantive due process "reckless or callous indifference" standard.

After carefully reading *Graham*, this court concludes that defendants have read the holding in the case too broadly. The Supreme Court in *Graham* did not hold that all prearrest excessive force claims are to be analyzed exclusively under the Fourth Amendment. Rather, *Graham* provides explicit guidance for dealing with excessive force cases:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons

---

**2.** The First Amendment, the Fourth Amendment, most of the Fifth Amendment, the Sixth Amendment, and most of the Eighth Amendment have been applied to state and local government through the Due Process Clause of the Fourteenth Amendment.

**3.** *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985); *Bullard v. Valentine*, 592 F.Supp. 774 (E.D.Tenn.1984); *Garcia v. County of Los Angeles*, 588 F.Supp. 700 (C.D.Cal.1984).

... against unreasonable ... seizures" of the person. This much is clear from our decision in *Tennessee v. Garner* [471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)], *supra*.... Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. (Citations, parentheticals, and footnotes omitted).

109 S.Ct. at 1870–71.

■ Clearly, in this case the Fourth Amendment does not provide an "explicit textual source of constitutional protection." Pursuant to *Brower*, the Fourth Amendment provides no protection at all because the decedent was not "seized". Since a specific constitutional amendment does not govern plaintiffs' claim of excessive force, plaintiffs may properly claim a violation of substantive due process under the Fourteenth Amendment.

Claims of violations of substantive due process have recently been before the Sixth Circuit and the Ninth Circuit. In *Pleasant v. Zamieski*, 895 F.2d 272, 276 n. 2 (6th Cir.1990), an auto theft suspect was accidently shot and killed by a police officer. Although the Court rejected the plaintiff's substantive due process argument because her excessive force claim fell squarely within the parameters of the Fourth Amendment (decedent had been "seized" before he was shot and killed), the Court noted that substantive due process claims

are still proper in cases "in which a free citizen is denied his or her constitutional right to life through means *other than* a law enforcement official's arrest, investigatory stop or other seizure." (Emphasis provided).

■ In *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1408–09 n. 10 (9th Cir.1989), the Ninth Circuit, following a long line of United States Supreme Court cases [4], held that to establish a violation of substantive due process, the plaintiffs must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. The Court then stated:

In *Graham v. Connor*, [490 U.S. 386] 109 S.Ct. 1865, 1870–71 [104 L.Ed.2d 443] (1989), the Supreme Court held that a claim of abusive governmental conduct that implicates a specific constitutional right must be analyzed as a violation of that right, rather than as a violation of substantive due process. As a result, cases like *Rutherford* [*v. City of Berkeley*, 780 F.2d 1444 (9th Cir.1986)], *Vaughan* [*v. Ricketts*, 859 F.2d 736 (9th Cir.1988)] and *Meredith* [*v. State of Arizona*, 523 F.2d 481 (9th Cir.1975)] would today be treated as fourth and eighth amendment challenges. A plaintiff may still state a claim for violation of substantive due process where it is alleged that the government has used its power in an abusive, irrational or malicious way *in a setting not encompassed by some other enumerated right*. (Emphasis provided).

Plaintiffs have alleged that Deputy Moore operated his vehicle with recklessness and conscious disregard for the safety of Karrie Darnell. As the plaintiffs claim is not encompassed by some other enumerated right, plaintiffs' allegations are sufficient to state a substantive due process claim under the Fourteenth Amendment.

Defendants suggest that, as a matter of law, the mere pursuit of a vehicle cannot

---

**4.** See *Village of Euclid v. Amber Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Moore v. City Of East Cleveland*, 431 U.S. 494, 97

S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928).

rise to the level of recklessness required for a substantive due process violation. This case is before the court on a motion to dismiss and the court will not dismiss the case unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their Fourteenth Amendment claim. Taking the factual allegations of the plaintiffs' complaint as true, the court finds that it does not appear beyond doubt that plaintiffs will not be able to prove that Deputy Moore acted so recklessly that he deprived Karrie Darnell of her substantive due process rights. Consequently, plaintiffs' Fourteenth Amendment claim against Deputy Moore will not be dismissed.

■ Next, defendants argue that plaintiffs have failed to state a claim of inadequate training and supervision against the Town of Akron. In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. The Court further stated that:

> *Monell's [Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)] rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible.... But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible,

and for which the city may be held liable if it actually causes injury.

109 S.Ct. at 1205.

Although defendants suggest that plaintiffs have failed to allege facts supporting a reasonable inference of the existence of "deliberate indifference", plaintiffs' complaint clearly alleges that "the Town provided no specialized training to its law enforcement officers, including the individual Defendant, on the subject of high-speed chases and his [sic] constitutional, statutory and departmental limits on his [sic] authority." Amended Complaint at ¶ 18. This allegation of complete failure to train supports an inference of "deliberate indifference" to the rights of the public. In discussing the "deliberate indifference" standard, the Supreme Court in *City of Canton* stated:

> For example, city policy makers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

109 S.Ct. at 1205 n. 10.

As plaintiffs point out, like using firearms, pursuing a vehicle at speeds in excess of 90 miles per hour over winding roads at night constitutes the use of deadly force, such that a complete failure to train officers on the subject of high-speed pursuits can be characterized as "deliberate indifference." Consequently, the court finds that the plaintiffs have sufficiently stated a claim of inadequate training against the Town of Akron.

■ Finally, defendants argue that plaintiffs are not entitled to recover either hedonic damages [5] or damages for their own

---

5. The parties are in general agreement that Indiana law does not allow for recovery of

hedonic damages, although plaintiffs argue that the Indiana courts are "on the verge" of allow-

pain and suffering. The availability of damages for constitutional rights violations is considered a question of federal law and is governed by federal standards. Whatever the constitutional basis for § 1983 liability, such damages must always be designed "to compensate injuries caused by the [constitutional] deprivation." *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). The Supreme Court has held that compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering[6].

■ With respect to hedonic damages, defendants assert that since the plaintiffs' complaint does not allege that the decedent experienced any pain and suffering between the time of her injury and the time of her death, the decedent apparently did not have any moment of cognition during that period and thus there was no moment during which she could have experienced any loss of ability to enjoy the value of life. Hedonic damages may be properly defined as those damages awarded "for the loss of enjoyment of life, or for the value of life itself, as measured separately from the economic productive value that an injured or deceased person would have had." Black's Law Dictionary (6th ed.1990). The deprivation of life that is prohibited by the Fourteenth Amendment includes "not only of life [itself], but of whatever God has given to everyone with life for its growth and enjoyment...." *Munn v. Illinois,* 94 U.S. 113, 142, 24 L.Ed. 77 (1876) (Field, J., dissenting). The loss of life means more than being deprived of the right to exist, or of

the ability to earn a living; it includes deprivation of the pleasures of life. *Sherrod v. Berry,* 629 F.Supp. 159, 163 (N.D.Ill. 1985).

On appeal, the Seventh Circuit in *Sherrod v. Berry,* 827 F.2d 195 (7th Cir.1987), held that the district court did not commit an error in admitting the expert testimony of an economist who testified on the hedonic value of Sherrod's life. The Court stated that "it is well settled in this Circuit that § 1983 permits recovery on behalf of the victim's estate for the loss of life." 827 F.2d at 205. See also *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984); *Bass v. Wallenstein,* 769 F.2d 1173 (7th Cir. 1985). Thus, the plaintiffs in this case may properly claim as an element of damages the decedent's loss of enjoyment of life.

■ Whether plaintiffs may claim damages for their own pain and suffering caused by the alleged deprivation of the decedent's constitutional rights is a more difficult question. Clearly, actual losses suffered by a plaintiff who has proven a violation of *his* constitutional rights are compensable. *Crawford v. Garnier,* 719 F.2d 1317, 1324 (7th Cir.1983); *Smith v. Stoner,* 594 F.Supp. 1091, 1115 (N.D.Ind. 1984). The plaintiffs in this case have not claimed a violation of their own constitutional rights[7] and are apparently claiming that they suffered injuries due to decedent's wrongful death and should recover damages for this wrongful death[8]. Since plaintiffs' have not alleged that their own constitutional rights have been violated, their claim for wrongful death must be construed as a state law pendent claim. Although the court has pendent jurisdiction

---

ing such recovery. However, where state law is inconsistent with the deterrence policies of § 1983 and the Fourteenth Amendment protection of life, state law does not apply. The Seventh Circuit has explicitly held that § 1983 allows "recovery for loss of life notwithstanding inhospitable state law...." *Bell v. City of Milwaukee,* 746 F.2d 1205, 1239 (7th Cir.1984).

6. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

7. The Seventh Circuit has recognized that the parent-child relationship is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment and that an intentional, reckless or lawless killing of a child violates the parent's substantive constitutional guarantees. *Sherrod v. Berry,* 827 F.2d 195, 207 (7th Cir. 1987); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1242–1245 (7th Cir.1984). See also *Doty v. Carey,* 626 F.Supp. 359, 362 (N.D.Ill.1986).

8. See plaintiffs' Amended Complaint at ¶ 3 and plaintiffs' response to Defendants' Motion to Dismiss at 15.

over the state wrongful death claim, the court must look to Indiana law to determine whether plaintiffs can recover for their own pain and suffering.

The pertinent Indiana statute is I.C. 34–1–1–8 which provides in part:

(e) In an action to recover for the death of a child, the plaintiff may recover damages:

(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and

(3) to pay the expenses of:

(A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;

(B) the child's funeral and burial;

(C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;

(D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and

(E) the administration of the child's estate, including reasonable attorney's fees.

Clearly, Indiana law does not provide for the recovery of damages for the parents' pain and suffering occurring as a result of their child's wrongful death. Consequently, plaintiffs' state law claim for damages for their own pain and suffering must be dismissed.

## Conclusion

For the foregoing reasons defendants' motion to dismiss is hereby GRANTED IN PART and DENIED IN PART.