**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lealon MULDROW, Defendant–**
**Appellant.**

No. 93–3138.

United States Court of Appeals,
Tenth Circuit.

March 25, 1994.

Leon J. Patton (Randall K. Rathbun, U.S. Atty., with him on the brief), Asst. U.S. Atty., Kansas City, KS, for plaintiff-appellee.

John C. Donham, Overland Park, KS, for defendant-appellant.

Before BALDOCK, ALDISERT,* and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Muldrow appeals his jury conviction of possession of cocaine base [1] within 1,000 feet of a school, with the intent to distribute. He contends the trial court improperly denied the motion to suppress physical evidence, improperly allowed expert testimony, and erred in failing to grant him a new trial. He also contends the evidence was insufficient to establish his guilt. We affirm.

## BACKGROUND

While investigating a burglary, Officer Garner saw two men, a white man carrying a paper sack and a black man, walk past him. After passing the Officer, the two men started to run. He followed them and discovered the black man, Defendant, trying to hide in a nearby garbage area. Officer Garner asked Defendant several innocuous questions such as what was he doing there and where did he live. Defendant gave inconsistent and evasive replies. Defendant gave a name, which turned out to be false, and said he had no identification with him. At Officer Garner's request, Defendant got into the police car. Defendant was not placed under arrest, was not handcuffed, and was not patted down.

Officer Garner, with Defendant along, drove back to the nearby burglary scene. There they met Officer Sutton who confirmed there had been a burglary. Officer Garner asked Defendant about the white man Officer Garner had seen him with earlier and Defendant said he did not know what the Officer was talking about. Officer Garner then tried to verify Defendant's name and address by calling the dispatcher, a process that required them to wait for dispatch to obtain information. While they were waiting for a reply, Officer Sutton asked Defendant, who was then out of the car, if he knew anything about the burglary. Officer Sutton testified Defendant said: he did not know about it; "You can look anywhere on me;" and "I don't have anything." Thus invited, Officer Sutton searched him and found a driver's license listing its owner as a white male named James Sevart. Defendant gave an implausible explanation for having the license. Shortly after obtaining the driver's license, Officer Sutton found and arrested Mr. Sevart, who had a paper grocery sack full of cocaine. Mr. Sevart pointed out Defendant, still in Officer Garner's car, and told Officer Garner that Defendant had given him the bag of cocaine to hold. Officer Garner then arrested Defendant.

Neither Officer's written report mentions Defendant's consent to be searched. Officer Sutton's report erroneously states, "After Officer Garner advised [Defendant] that he was under arrest for burglary, I conducted a search of the party incident to a lawful arrest."

After he was granted immunity, Mr. Sevart testified he and Defendant obtained the

---

1. Crack cocaine is also known as cocaine base.

cocaine by burglarizing an apartment belonging to a friend of Defendant's sister.

## I. Suppression of Evidence

Defendant challenges the trial court's refusal to suppress evidence obtained through the driver's license because, he contends, it was found after an arrest without probable cause. He also contends the trial court erred in finding voluntary consent because (1) the Officers lied, as shown by discrepancies between their written reports and their testimony at trial, and (2) common sense shows Defendant would not have consented to a search.

■ In reviewing the trial court's denial of a motion to suppress, we "accept the trial court's findings of fact, unless clearly erroneous, and ... consider the evidence in the light most favorable to the Government." *United States v. Morgan*, 936 F.2d 1561, 1565 (10th Cir.1991) (quoting *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). However, the ultimate determination of the reasonableness of a search under the Fourth Amendment is a conclusion of law we review de novo. *Id.* at 1565–66.

■ For the purpose of Fourth Amendment analysis, we have distilled rulings of the United States Supreme Court to define "three categories of police/citizen encounters": "voluntary cooperation ... in response to non-coercive questioning," *Terry*-type stop, and arrest. *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). The first category, a police/citizen encounter where there is voluntary cooperation by the citizen in response to noncoercive questioning, is not at issue in this case because neither side alleges there was such an encounter. Thus, we must decide if this was a *Terry*-type stop or an arrest.

The standards [for a *Terry*-type stop] are set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Most courts characterize this as a brief, non-intrusive detention during a frisk for weapons or preliminary questioning.... This is considered a seizure of the person within the meaning of the Fourth Amendment, but need not be supported by probable cause. In order to justify an investigatory stop, the officer need have only specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.

The final category is an arrest which is characterized by highly intrusive or lengthy search or detention. An arrest is justified only when there is probable cause to believe that a person has committed or is committing a crime.

*Id.* (citations and internal quotations omitted). The determination of whether an individual is detained pursuant to a valid investigatory stop or is actually under arrest must be based upon the facts of the case. *Id.* at 1364.

■ "In evaluating the reasonableness of an investigative stop, courts are to examine 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Santillanes*, 848 F.2d 1103, 1107 (10th Cir.1988) (quoting *United States v. Recalde*, 761 F.2d 1448, 1454 (10th Cir.1985)). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment's prohibition against "unreasonable searches and seizures" is inadmissible at trial. However, where there has been seizure and detention of an individual in violation of the Fourth Amendment, the individual's subsequent consent to search may, "under certain circumstances, [break the causal connection between the illegal action and the consent and thereby] remove the taint of an illegal detention." *Recalde*, 761 F.2d at 1457 (causal connection between illegal detention and consent unbroken where police had no probable cause to extend an initially proper traffic stop). If there has been a stop in violation of the Fourth Amendment, the government has a heavier burden to carry in establishing subsequent voluntary consent than when consent is given after a permissible stop. *Id.*

■ Consent to search is voluntary if it is not the product of express or implied duress or coercion,. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227–28, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). To establish voluntary consent

(1) There must be clear and positive testimony that consent was "unequivocal and specific" and "freely and intelligently" given; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.

*United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977) (citing *Villano v. United States,* 310 F.2d 680, 681 (10th Cir.1962)). There is no bright line test for determining consent; each case is a question of fact to be determined from the totality of circumstances. *Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. at 2047.

In this case, we must first determine whether Defendant was under arrest or was detained pursuant to a valid *Terry* stop at the time he consented to be searched and was found to be carrying another person's driver's license. Defendant argues his detention was an "arrest" based upon two phrases contained in reports written by the Officers after the incident. Officer Sutton's report states he searched Defendant after he had been placed under "lawful arrest" by Officer Garner. Officer Garner's report states he placed Defendant in "custody" when he initially questioned Defendant by the garbage area and asked him to get into the police car. The gist of this argument is that the Officers' testimony at the suppression hearing should be disregarded as lies because their written reports show Defendant was under arrest before he was searched.

■ Despite Officer Sutton's report, the record establishes Defendant was detained pursuant to a valid investigatory stop of the type permitted under *Terry* when he consented to the search. There was a report of a crime, Defendant was seen running from the area, and was found trying to hide in a nearby garbage area. These circumstances justified the Officer's action at the time he stopped Defendant to ask him who he was and what he was doing. When questioned, Defendant gave inconsistent or evasive answers to the simplest questions and said he had no identification. These facts, along with the reasonable inferences drawn therefrom, gave rise to reasonable and articulable suspicion that Defendant had been engaged in criminal activity. Back at the burglary site Officer Garner confirmed there was a crime, and Defendant denied knowledge of a companion even though the Officer had seen him with a companion only moments earlier. Officer Garner then detained Defendant while trying to confirm Defendant's name and address. The license was found early during Defendant's detention while the detaining Officer was performing the act that justified the detention: verification of the identity of a suspiciously acting man, who said he carried no identification, near the scene of a burglary. The detention lengthened because the Officer had to wait for the verification of Defendant's stated name and address. Under these facts, the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *Santillanes,* 848 F.2d at 1106 (quoting *Recalde,* 761 F.2d at 1454). Therefore, the stop was a valid investigatory stop as permitted in *Terry.*

Turning to the issue of consent, Defendant once again contends the inconsistencies between the Officers' written reports and their testimony show they lied and, therefore, their testimony absent his consent should be disregarded. Examining the reports at issue, we do not find any material discrepancies. Officer Garner's use of the term "custody" in his report and his testimony to describe Defendant's detention is not material. The government does not dispute Defendant was in custody at the time of the search; instead, as discussed above, it claims the admitted custody was a valid *Terry*-stop detention. Officer Sutton's report does contain the statement "searched incident to lawful arrest." However, at trial he testified he had no knowledge whether Defendant was under arrest at the time of the search. Regardless

of Officer Sutton's report, there is no evidence to contradict the Officer's testimony Defendant consented to be searched. The issue of the language in the report was fully developed at the suppression hearing,[2] and the trial court found the Officers' trial testimony to be credible.

Defendant contends common sense shows he would not volunteer to be searched while he was carrying Mr. Sevart's license and denying the existence of a white companion. We are not called upon to evaluate the Defendant's common sense. Instead, we are called upon to decide if the trial court's determination of the voluntariness of consent is clearly erroneous. The evidence shows Defendant not only consented to the search, he initiated the search: "You can look anywhere on me." This consent was unequivocal and specific; there is no evidence of duress or coercion. Defendant was out of the car talking with Officer Sutton when he consented to the search. Upon a close review of the entire record, we hold the finding of voluntary consent is not clearly erroneous.

Having determined the driver's license was found pursuant to a voluntary consent search during a permissible *Terry* stop, we need not address Defendant's contention the driver's license was instrumental in identifying Mr. Sevart and through him the sack of cocaine. When the police came into possession of the license through a legitimate, consensual search, any evidence discovered as a direct result of the license is not the fruit of an illegal search and seizure. Accordingly, we affirm the trial court's denial of Defendant's Motion to Suppress.

## II. The Expert Testimony

■ The trial court admitted, over Defendant's objection, the testimony of two expert witnesses: one who identified the substance in the paper sack as cocaine base, and the second who testified about the amounts of cocaine commonly held for personal use and for distribution. We review a trial court's admission of evidence under an abuse of

discretion standard. *United States v. Markum*, 4 F.3d 891, 895 (10th Cir.1993).

### A. Scientific Knowledge

The first expert witness was a forensic chemist. The chemist testified about his education, training and experience. He identified the tests used and the results of those tests. He ultimately testified the paper bag contained 4.4 kilos of cocaine.

■ Defendant contends it was an abuse of discretion for the trial court to admit the chemist's testimony without foundation establishing the test methods he used were widely accepted in the scientific community as required by *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). However, Defendant is wrong. "General acceptance" of principal underlying scientific evidence is not a precondition to the admissibility of expert evidence under the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, —, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993). The *Frye* test is superceded by the Rules of Evidence. *Id.,* — U.S. at —, 113 S.Ct. at 2790; *see* Fed. R.Evid. 702.

■ "Under the standard for Rule 702 announced in [*Daubert*], the trial court must determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Markum,* 4 F.3d at 895–96. Under this standard, the trial court did not abuse its discretion by permitting the testimony. The testimony identified the tests the expert performed, explained how they were performed, and explained the reason they were performed. The testimony established a valid scientific connection to the pertinent inquiry: the identity of the substance in the paper sack. The witness testified about his scientific knowledge, and that knowledge would have assisted the jury in determining the identity of the substance. Accordingly, it was not error to admit the testimony under Rule 702.

**2.** At trial, Officer Sutton admitted he was not present when Defendant was detained and did not hear or see Defendant placed under arrest. He testified he wrote the report as he did because he was a new officer and, after he knew Defendant was later arrested, tried to write the report to show what he thought was the most "helpful" reason for a patdown.

## B. Specialized Knowledge

█ The expert witness with specialized knowledge of drug trafficking was a veteran police officer. He testified about his education and his extensive training in investigations of drugs and drug trafficking. He testified he has supervised hundreds of drug trafficking investigations leading to prosecution. He testified about his familiarity with drug trafficking in the community, amounts of cocaine sold on the streets, and the prices of cocaine. He testified one kilo of cocaine was a "huge amount" because one kilo was very expensive and would be dangerous to transport. He testified that, in his experience, such an amount would be for distribution and not for personal use. He did not offer an opinion on whether Defendant possessed the 4.4 kilos for personal use or for distribution. Defendant contends the trial court erred by admitting the testimony because it was purely speculative. He contends there was no foundation for the testimony and the jury should have been allowed to consider facts about Mr. Sevart's likely intent to consume the entire amount of cocaine.

We have previously examined the admission of specialized evidence on the significance of the amount of cocaine possessed. *United States v. McDonald*, 933 F.2d 1519 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). In *McDonald*, we stated, "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *Id.* at 1522. We held evidence on the significance of an amount of cocaine is specialized. "A person possessing no knowledge of the drug world would find the importance of this fact [amount of cocaine] impossible to understand. The average juror would not know whether this quantity is a mere trace, or sufficient to pollute 1,000 people". *Id.*

In the case before us, as in *McDonald*, we find the specialized knowledge of the officer assisted the jury in understanding a fact at issue. The amount of cocaine involved in the case before us is over four kilos, a fact having little significance to those unfamiliar with drug use. The expert testified concerning only his specialized knowledge, and he did not go outside his specialized knowledge by opining about Defendant's actual intent. Therefore, the trial court's admission of the expert's testimony about his specialized knowledge of drug quantities was not an abuse of discretion.

## III. Sufficiency of Evidence

Defendant challenges the sufficiency of the evidence. He contends Mr. Sevart's testimony was the only evidence presented to prove Mr. Muldrow's guilt and the testimony must be disregarded as it is not credible. Mr. Sevart testified Defendant offered to let Mr. Sevart, a recent and casual acquaintance, in on a plan to steal cocaine from the apartment. Defendant offered him twenty percent of the action[3] if Mr. Sevart would be the driver and the lookout.

The jury was aware Mr. Sevart was compelled to testify, and it was aware he was granted immunity. The jury also was aware of all facts showing Mr. Sevart had a bad character including his use of drugs, his conviction for an alcohol related vehicular manslaughter, his drinking on the night of the incident, and his initial lies to the police about the incident.

Defendant contends it was impossible for the jury to believe Mr. Sevart because the jury knew Mr. Sevart was compelled to testify under a grant of immunity and also knew about Mr. Sevart's bad character. In particular, Defendant contends the testimony about letting Mr. Sevart in on a potentially lucrative burglary of cocaine is so inherently unbelievable no reasonable juror could have found Defendant guilty.

We review de novo the sufficiency of evidence to support conviction. *Markum*, 4 F.3d at 893. "We review all the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the prosecution." *United States v. Uresti–Hernandez*, 968 F.2d 1042, 1045 (10th Cir.1992). We must affirm a

---

**3.** The action being whatever was recovered from the apartment.

"conviction if there is record evidence which would allow a rational trier of fact to find the defendant guilty of the crime charged in the indictment beyond a reasonable doubt." *United States v. Young*, 862 F.2d 815, 818 (10th Cir.1988). "In conducting this review, we are not permitted to ... consider witness credibility as that duty is exclusively delegated to the jury." *United States v. Davis*, 965 F.2d 804, 811 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *accord United States v. Hager*, 969 F.2d 883, 888 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992) ("The credibility of a witness and weight of his testimony are for the trier of fact alone.").

■ The evidence fully supports Defendant's conviction. Mr. Sevart testified he and Defendant burglarized the apartment for the purpose of obtaining cocaine and planned to split the proceeds. He testified they obtained the sack of cocaine as planned.

Other witnesses corroborated parts of Mr. Sevart's testimony. Mr. Sevart testified the tenant of the burglarized apartment was an acquaintance of Defendant's sister. Defendant's sister testified her friend lived in an apartment building on Rainbow at the time of the burglary. Mr. Sevart testified Defendant gave him the sack to hold. Two witnesses testified they saw Defendant together with a white man who was holding a sack. Mr. Sevart testified he had given his license to Defendant to hold. Officer Sutton found Mr. Sevart's license in Defendant's pocket.

The jury determined Mr. Sevart's testimony was credible. Accordingly, as the evidence supports the conviction, we must affirm.

### IV. New Trial

Defendant contends the trial court erred in not granting him a new trial with evidence suppressed because of newly discovered evidence justifying suppression of evidence. The purported newly discovered evidence was Mr. Sevart's testimony at trial, testimony that Defendant alleges corroborates his theory that the Officers lied when they said he was not under arrest when searched. Because Mr. Sevart did not testify at the suppression hearing,[4] but did testify at trial, Defendant contends Mr. Sevart's trial testimony is newly discovered evidence not available at the time of the suppression hearing. Thus, Defendant contends the trial court should have reconsidered its suppression ruling because Mr. Sevart's trial testimony was newly discovered evidence entitling him to a new trial with the evidence suppressed.

■ The Federal Rules of Criminal Procedure provide that a trial court may grant a new trial if required in the interest of justice. Fed.R.Crim.P. 33. We review the trial court's grant or denial of a motion for new trial under the abuse of discretion standard. *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). A motion for a new trial based upon alleged newly discovered evidence "is not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991).

■ If a former codefendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not newly discovered if the defendant was aware of the proposed testimony prior to trial. See *United States v. DiBernardo*, 880 F.2d 1216, 1224–25 (11th Cir.1989) (newly available exculpatory testimony of codefendant not newly discovered because known to defendant before trial); *United States v. Metz*, 652 F.2d 478, 480 (5th Cir.1981) (same).

■ In this case, Mr. Sevart's trial testimony is not newly discovered evidence. The substance of his testimony was known to defendant's counsel prior to trial and was produced at trial.

Therefore, Defendant has failed to establish any newly discovered evidence. Fur-

4. At the time of the suppression hearing, Defendant and Mr. Sevart were codefendants. Both chose not to testify. The trial court granted a motion to suppress the evidence against Mr. Sevart because it found he had been arrested without probable cause.

**1340**

ther, the portion of Mr. Sevart's trial testimony proffered as newly discovered evidence would not have changed the result of either the suppression hearing or the trial. It did not exculpate Defendant. It is not material to the suppression hearing because, taken in its entirety, it does not establish that the Officers' testimony at the suppression hearing was untruthful. Accordingly, the trial court did not err in denying the motion for a new trial based upon alleged newly discovered evidence.

## CONCLUSION

We find no error in the trial court's denial of suppression of evidence or its allowance of the expert testimony. The evidence fully supports the jury's conviction. The trial court did not err in denying a new trial based upon alleged newly discovered evidence. Accordingly, we AFFIRM in all respects.

