**Frank McGUIRE, Plaintiff,**

v.

**CITY OF SANTA FE, et al., Defendants.**

**No. Civil 95–995 BB/WWD.**

United States District Court,
D. New Mexico.

Dec. 4, 1996.

Phillip A. Martinez, Miguel P. Campos, Albuquerque, NM, for Plaintiff.

Janet Clow, Santa Fe, NM, for Defendants.

### MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S HEDONIC DAMAGE EXPERTS

BLACK, District Judge.

THIS MATTER is before the Court on Defendants' motion in limine to exclude the testimony of Patricia Murphy and John Myers on hedonic damages. The Court having read the briefs of counsel and taken evidence at a hearing on October 25, 1996, finds Defendants' motion is well taken and should be GRANTED.

Plaintiff has submitted to Defendants the reports of two experts whom Plaintiff seeks to have testify regarding the value of the loss of enjoyment of life Plaintiff allegedly suffered as a result of Defendants' actions. One expert is Patricia Murphy, a Ph.D. psychologist, who prepared a report based on "The Lost Pleasure of Life Scale," which estimates the degree of loss that Plaintiff has suffered in four areas of his life: practical functioning; emotional/psychological functioning; social

functioning; and occupational functioning. The second expert is John Myers, a Ph.D. economist, who calculated the value of Plaintiff's average loss of enjoyment of life.

Whether expert testimony will be admitted is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Court stated that under Rule 702, a judge must determine whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. The *Daubert* Court read the term "scientific" in Rule 702 to require a firm grounding in the methods and procedures of science and the term "knowledge" to refer to an existing body of empirical data. Douglas B. Marlowe, *A Hybrid Decision Framework for Evaluating Psychometric Evidence,* 13 Behav.Sci. & L. 207, 208 (1995).[1]

> This circuit, interpreting *Daubert,* enunciated a two-prong test for determining the admissibility of scientific evidence that considers first whether the reasoning or methodology are scientifically valid, and second, whether that reasoning or methodology properly can be applied to the facts in issue, that is, whether it is relevant and of assistance in determining a fact in issue.

*United States v. Coronado–Cervantes,* 912 F.Supp. 497, 499 (D.N.M.1996); *see also United States v. Muldrow,* 19 F.3d 1332 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 175, 130 L.Ed.2d 110 (1994).

 Dr. Murphy did not testify at the *Daubert* hearing, but Dr. Myers testified as to how he translated Dr. Murphy's report into dollar damages. Dr. Myers calculated

---

1. Dr. Murphy relied on Marlowe's article in writing her report and to support her conclusion that her report satisfied *Daubert.*

damages for the two types of loss Plaintiff alleges he incurred: (1) loss of wages and (2) loss of the enjoyment of life. As to Plaintiff's alleged loss of wages, Dr. Myers determined what Plaintiff was earning at the time of his termination, how long he was out of work, and what Plaintiff is now earning. Dr. Myers then calculated Plaintiff's potential wage loss based on two different retirement assumptions and discounted it to present value.

As to Plaintiff's alleged loss of enjoyment of life, Dr. Myers testified that Dr. Murphy interviewed Plaintiff to determine the extent of Plaintiff's lost enjoyment of life. Dr. Murphy then applied the data she collected from her interview to her Lost Pleasure of Life Scale and arrived at a percentage value of Plaintiff's lost enjoyment of life. Dr. Myers testified that it was Dr. Murphy's role to "determine the part of the enjoyment of life that has been lost," while it was his role to address what the monetary value of the lost enjoyment is worth. On cross examination, Dr. Myers admitted that he took Dr. Murphy's studies "at face value" and plugged her percentages regarding Plaintiff's lost enjoyment into his formula for determining the total value of an individual's life.

To apply his formula, Dr. Myers first assigned a dollar figure to the worth of Plaintiff's life. Dr. Myers has used wage studies to conclude that the economic value of a human's life ranges from $928,000 to $18,-464,000. He determines the value of a particular individual's life by taking the average value of life from wage studies and then factoring in an individual's age and risk aversion to assign a dollar value to the particular individual's life. Once Dr. Myers arrived at a dollar value for Plaintiff's life in this manner, he multiplied this value of Plaintiff's life by Dr. Murphy's percentage of Plaintiff's lost enjoyment of life to arrive at a dollar figure for Plaintiff's lost enjoyment of life. By applying Dr. Murphy's percentage of loss enjoyment estimates, Dr. Myers concluded that the value of Plaintiff's lost enjoyment of life caused by Defendants' alleged harassment and termination is between $1,430,00 and $2,300,000.

Prior to *Daubert,* a trend seemed to be developing to allow expert testimony on hedonic damages, those intended to compensate for the loss of pleasure and satisfaction of life. *See, e.g., Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1239 (7th Cir.1984); *Frye v. Town of Akron,* 759 F.Supp. 1320, 1326 (N.D.Ind.1991). More recent decisions, however, seem to reject hedonic damages as a proper subject for expert testimony, and indeed a *Daubert* analysis of the present record suggests the reason for the reversal of the earlier acceptance of such testimony.

The first question under *Daubert* asks whether the theory or technique at issue can be tested. At 591, 113 S.Ct. at 2796. While Dr. Myers and Dr. Murphy both cited academic literature supporting the economic value of life and the concept of pleasure having value apart from an individual's quantifiable wage production value, neither suggested any widely accepted standards for uniformly measuring the value of such pleasure. The total life values suggested by Dr. Myers, ranging from $928,000 to $18,464,000, and his calculations that Defendants' actions deprived Plaintiff of between $1,430,000 and $2,300,000 in lost pleasure, suggests any such test would have very broad and flexible parameters.

*Daubert* also suggests that the scientific theory at issue is likely to be reliable if it is subjected to peer review. Dr. Myers testified that, for the most part, he derived the economic analysis he applied to Dr. Murphy's Life Enjoyment Analysis from peer reviewed journals. The sociological and economic foundations of hedonic damages have, however, also been assailed as lacking any verifiable basis by respected economists. *See, e.g.,* W. Kip Viscusi, *The Value of Life: Has Voodoo Economics Come to the Courts?,* 3 J. Forensic Econ. 1 (1990); Ted R. Miller, *The Plausible Range for the Value of Life: Red Herrings Among the Mackerel,* 3 J. Forensic Econ. 17 (1990); *cf.* Thomas Havrilesky, *Valuing Life in the Courts: An Overview,* 3 J. Forensic Econ. 71 (1990) (pain and suffering awards will consume up to fifteen percent of the country's annual gross national product if

hedonic damages become the standard for nonpecuniary awards).

The third measuring stick set forth in *Daubert* is the existence of a known error rate. Dr. Murphy's report states the "Lost Pleasure of Life Scale," which she used to calculate the relevant percentages to be attributed to Plaintiff's hedonic losses, "has been found to be moderately reliable and that moderate reliability and validity means that results are greater than chance." This is hardly a quantifiable error rate and it hardly seems useful to provide the fact finder with "expert" testimony on figures that are only touted as more reliable than those which might be drawn out of a hat. The life experiences of a judge or jury would also seem to provide a guide to the value of life's pleasures which is more reliable than random chance and thus such testimony would seem unlikely to assist the trier of fact.

Finally, *Daubert* counsels the Court to consider whether the theory in question has been "generally accepted." At 593, 113 S.Ct. at 2797. Application of this test helps crystallize the analysis in this case. As noted earlier, after the *Daubert* decision, courts have generally rejected expert testimony on hedonic damages. *See, e.g., Sullivan v. United States Gypsum Co.,* 862 F.Supp. 317 (D.Kan.1994); *Hein v. Merck & Co.,* 868 F.Supp. 230 (M.D.Tenn.1994); *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345 (1994); *Estate of Sinthasomphone,* 878 F.Supp. 147 (E.D.Wis.1995); *Ayers v. Robinson,* 887 F.Supp. 1049 (N.D.Ill.1995); *Anderson v. Department of Soc. Serv.,* 248 Neb. 651, 538 N.W.2d 732 (1995); *Kurncz v. Honda North Am., Inc.,* 166 F.R.D. 386 (W.D.Mich.1996). The same trend away from allowing expert opinion on hedonic damages may be traced through time in the opinions of legal commentators. Andrew J. McClurg, *It's a Wonderful Life: The Case for Hedonic Damages in Wrongful Death Cases,* 66 Notre Dame L.Rev. 57 (1990); Tina Tabacci, Note, *Hedonic Damages: A New Trend in Compensation,* 52 Ohio St.L.J. 331 (1991); Dennis C. Taylor, Note, *Your Money or Your Life?: Thinking About the Use of Willingness-to-Pay Studies to Calculate Hedonic Damages,* 51 Wash. & Lee L.Rev. 1519 (1994); Thomas J. Airone, Note, *Hedonic Damages and the Admissibility of Expert Testimony in Connecticut After Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 15 Quinnipiac L.Rev. 235 (1995); Mark Geistfeld, *Placing a Price on Pain and Suffering: A Method for Helping Juries Determine Tort Damages for Nonmonetary Injuries,* 83 Cal.L.Rev. 773, 811 (1995) ("Cases seem to be piling up saying that 'expert testimony of valuation of "hedonic" damages is unreliable and invalid under the teaching of *Daubert.'* We may be on the way to a kind of judicial notice of the unreliability of that particular methodology.").

Permitting "expert" testimony on the value of hedonic damages would seem particularly inappropriate in a wrongful termination job discrimination suit like that at bar. Basically, Dr. Murphy will testify that Plaintiff lost $X\%$ of the enjoyment of life due to Defendants' discrimination against and eventual termination of Plaintiff. Dr. Myers will then testify that the total value of life is $Y$. Hence, $Y$ multiplied by $X\%$ will produce a mathematically reliable amount to which Plaintiff is entitled. The issue, however, is not whether each person has some pleasure in life, but whether there is a legitimate field of academic research that allows a person to become an expert in measuring the amount and value of another's loss of pleasure resulting from discrimination.

Such considerations led the court to reject hedonic damages in the employment discrimination context in *Mister v. Illinois Cent. Gulf R. Co.,* 790 F.Supp. 1411 (S.D.Ill.1992). The plaintiff, a black male, alleged the defendant railroad refused to hire him because of race and brought a class action under Title VII and 42 U.S.C. §§ 1981 and 1985. While the court recognized hedonic damages could be appropriate in personal injury litigation, it concluded such damages would provide an illicit double recovery in employment discrimination cases:

"Other elements of the hedonic value of life may include an individual's expectation for the future as well as enjoyment of past activities. In contrast to damages for pecuniary loss, these damages involve a more subjective analysis of the pleasure that the particular individual derived from living."

**234**

Tina Tabachi, Note, *Hedonic Damages: A New Trend in Compensation?*, 52 Ohio St.L.J. 331 (1991).

In this case, however, the only hedonic loss is caused by the lack of a job. *The back pay award fully compensates the class for any hedonic damage. Once the class is awarded back pay, the past lost ability to enjoy life is fully restored, since the class has received the object which caused the deprivation.* For example, in the personal injury context, a plaintiff who has lost an arm may have a claim for hedonic damages. However, if the arm was restored to him, his claim for hedonic damages would disappear, since he could no longer claim that he cannot enjoy the more subjective pleasures of life to the fullest. Similarly here, the plaintiff class has been made whole by an award of back pay. To allow hedonic damages on top of the back pay would be equivalent to a double recovery.

790 F.Supp. at 1421 (emphasis added).

In addition to having serious questions regarding the scientific basis for Dr. Murphy's and Dr. Myers' valuation of the loss of Plaintiff's enjoyment of life's pleasures caused by Defendants' discrimination, then, this Court does not believe hedonic damages are a proper element of damages in an employment discrimination case for the reasons set forth in *Mister*. In the present case, therefore, such testimony will not "assist the trier of fact to understand the evidence or determine a fact in issue." Fed.R.Evid. 702.

Now, therefore,

**IT IS ORDERED** that Defendants' *Motion in Limine* [# 36] is GRANTED, and that Dr. Murphy and Dr. Myers will not be allowed to testify as to Plaintiff's lost enjoyment of life.