**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

LAWRENCE WILLIAMS,

        Defendant-Appellant.

Case Nos. 96-1056, 96-1075

(D.C. 94-CR-254-M)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before PORFILIO, EBEL, and HENRY, Circuit Judges.

After examining the briefs and appellate record, this panel has unanimously determined that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Mr. Lawrence Williams appeals his convictions for conspiracy to distribute cocaine and for possession and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and (b)(1)(B)(iii). Mr. Williams was tried jointly with

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

six other defendants on various drug-trafficking and drug conspiracy charges. He was sentenced to 360 months and 240 months to run concurrently.[1]

In this opinion, we will consider all of the issues raised in Mr. Williams's appeals. For the reasons stated herein, we affirm his convictions.

_____

[1] This case has a rather distended procedural history; we will encapsulate it here. Mr. Williams initially appealed three issues in No. 96-1075 through counsel and one issue pro se, in Case No. 96-1056, for which Mr. Williams had filed a pro se brief alleging double jeopardy violations.

In February 1996, in No. 96-1056, Mr. Williams's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738, 744 (1967) ("[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."). Counsel suggest that the Supreme Court's decision in United States v. Ursery, 116 S. Ct. 2135, 2148-49 (1996), ostensibly precluded Mr. Williams's arguments. We allowed Mr. Williams to discharge his attorney in 96-1056, and we granted him several extensions to file his pro se brief on this and related issues, namely, ineffective assistance of counsel. Mr. Williams subsequently retained his current counsel in 96-1056. Counsel is mistaken in their impression of the proceedings in these cases:

> Currently there are two related appeals. There is an appeal filed pro se by [Mr. Williams]. That appeal, . . . [No.] 96-1056 is a direct appeal of the conviction and is addressed to civil forfeiture and double jeopardy issues. This appeal [also No. 96-1056] attempts to join the defendant's pro se appeal and other related appeals. An Anders brief has been filed by the defendant's previous attorney, also pending before this Court is the defendant's pro se reply to the Anders brief.

Aplt's Br. filed 06/23/97 at iv.

Had counsel reviewed the record, they would have realized that Mr. Williams retained counsel to brief the issues he raised *in his pro se appeal in 96-1056, concerning double jeopardy and civil forfeiture.* There is no Anders brief pending before this court, because Mr. Williams withdrew his counseled briefs.

2

# I. FACTUAL BACKGROUND

In October 1993, through confidential informant Fidel "Cadillac" Garner, federal agents discovered Mr. Williams's involvement in the distribution of crack cocaine. In the early 1990's, Mr. Garner had been involved in the drug trade with the late Bond Brye. Mssrs. Garner and Brye pooled money from different sources to purchase kilogram quantities of crack cocaine. Through Mr. Brye, Mr. Garner met Mr. Williams and another informant, Isiah Thomas.

At Mr. Brye's funeral in 1993, Mr. Garner again met Mr. Williams, who gave Mr. Garner his business card. At this point, federal authorities had contacted Mr. Garner. Mr. Garner subsequently arranged the first of a series of encounters with Mr. Williams.

In preparation for their October 27, 1993 meeting, federal agents outfitted Mr. Garner with a tape recorder. Mr. Williams spoke of his association with Mr. Brye and suggested that he, Mr. Garner, and a third party might consider buying some cocaine, and with Mr. Williams's help, Mr. Garner would sell it. Mr. Williams also indicated to Mr. Garner that he was going to open some "houses," i.e. "crack houses." Rec. vol. 18 at 542.

On two occasions in December 1993, a federal agent outfitted Mr. Garner with a transmitter and provided him with cash to purchase crack cocaine from Mr.

Williams. Mr. Garner delivered the crack cocaine to federal agents after each transaction.

In 1994, the agents arranged several more transactions between Mr. Garner and Mr. Williams. For each transaction, Mr. Garner delivered the purchased substance to the agents. The substance in question during each completed transaction was crack cocaine.

Through Mr. Thomas, the federal agents learned of Mr. Williams's association with Trips Enterprises in Denver, Colorado. The record indicates that the Trips Enterprises and its associated businesses were mere shams and that the Trips headquarters and offices served as locations for the sale, packaging, and distribution of crack cocaine.

The record indicates that at the May 26, 1994 meeting Mr. Williams solicited four Trips members to sell more crack cocaine. Mr. Williams also referred to Trips member Jeffrey McMillan, suggesting that he knew of two new locations for drug transactions.

Mr. Thomas provided information that the agents verified through video and audio surveillance. According to Mr. Thomas, Mr. Williams organized the crack cocaine distribution from Trips Enterprises headquarters. In April 1994, the agents arranged for Mr. Thomas to telephone Mr. Williams regarding payment of

a debt owed for crack. Mr. Williams arranged a meeting at Trips Enterprises, where the two exchanged money for crack cocaine.

The record also indicates that Mr. Thomas regularly accompanied another Trips member, Jeffrey McMillan, on runs to distribute crack at a designated crack house. According to Mr. Thomas's testimony, Mr. Williams supplied the crack cocaine on these occasions. In addition, the record indicates that Mr. Williams ordered Mr. Thomas to ride with Mr. McMillan, because it was "safer" that way. See Rec. (from co-defendant Jeffrey McMillan, No. 96-1076) vol. 11 at 13. On one occasion, in July 1994, when Mr. Thomas witnessed Mr. Williams handing Mr. McMillan baggies of crack cocaine for distribution, Mr. McMillan was later stopped, the crack cocaine was seized, and Mr. McMillan was arrested.

In Mr. Garner's final transaction with Mr. Williams, in August 1994, Mr. Garner met Mr. Williams at Trips Enterprises. The two discussed the price of a quarter kilogram of crack cocaine and arranged another meeting. The two met at Trips Records and agreed upon $7,200.00 for eight ounces of crack cocaine. Mr. Williams supplemented Mr. Garner's FBI-supplied $7,000 with an additional $200. Mr. Williams informed Mr. Garner that a third party was involved and that she would contact Mr. Garner. Mr. Garner drove to the destination where Mr. Williams had stated the third party would meet him to complete the transaction. Mr. Garner later met a woman, Chandra Minter, who traded a several baggies of

5

cocaine to him for the money. Mr. Garner gave Ms. Minter $7,100.00. When the officer searched Mr. Garner after the buy, the officer discovered the remaining $100.00. Mr. Garner discovered the cocaine was powder cocaine, and called Mr. Williams. Mr. Williams informed Mr. Garner that the cocaine had been "cooked," and "would come back into crack form." Rec. vol. 18 at 617.

## II. DISCUSSION

### A. Conspiracy

Mr. Williams alleges, for the first time on appeal, that there was insufficient evidence to support the district court's instruction regarding a unified conspiracy and the jury's finding that one existed. Because Mr. Williams did not object at the close of evidence and request a corrective instruction, we review for plain error.

Before we can correct an error that was not raised at trial there must be (1) an error, (2) that is plain, (3) that "affects substantial rights," and (4) that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 117 S. Ct. 1544, 1549 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotations omitted))). We find none of these elements here.

6

"To obtain a conviction for conspiracy, the government must show [1] that two or more persons agreed to violate the law; [2] that the Defendant knew at least the essential objectives of the conspiracy, . . . [3] that the Defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent." United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir.) (internal quotations omitted), cert. denied, 117 S. Ct. 253 (1996). Mr. Williams challenges the interdependence factor. "A defendant's activities are interdependent if they 'facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole.'" Id. at 1286 (quoting United States v. Horn, 946 F.2d 738, 740-41 (10th Cir. 1991)).

We have no difficulty concluding there is sufficient evidence to establish that Mr. Williams's activities were in furtherance of a unified conspiracy. "Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a jury could find the defendant guilty beyond a reasonable doubt." United States v. Culpepper, 834 F 2d. 879, 881 (10th Cir. 1987). The government, through the testimony of its informants, recapitulated a "collocation of circumstances" where Mr. Williams supplied, distributed, and arranged for the purchase of controlled substances. United States v. Pack, 773 F.2d 261, 265-66 (10th Cir. 1985) (conspiracy "may be

inferred from a development and a collocation of circumstances") (internal quotations omitted).

The record indicates there is ample evidence in the record from which the jury could discern the existence of unified conspiracy. See United States v. Evans, 970 F.2d 663, 670-71 (10th Cir. 1992) (holding that evidence to establish the existence of a shared criminal objective is "proof that [the individuals] intended to act together for their shared mutual benefit within the scope of the conspiracy charged") (emphasis deleted). The government presented the testimony of Mssrs. Garner and Thomas, which detailed their various encounters involving drug transactions with Mr. Williams and other Trips associates. The government supplemented the informant testimony with audio and video surveillance of various meetings among the Trips associates. The record also indicates Mr. Williams knew of the existence of the crack houses, and even encouraged increased sales at these locations. In addition, Mr. Williams played a role in the supplying and opening of known crack houses. There is no indication that the district court's instruction or that the jury's conclusion that the Trips organization was a conspiracy, rather than a legitimate business organization as Mr. Williams asserts, was in error. There is no plain error here.

## B. Relevant Conduct

Mr. Williams contends that the district court erred when it enhanced Mr. Williams's sentence based upon evidence of certain drug quantities, even though he was not convicted of transactions involving these additional amounts. See United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993). Mr. Williams concedes that "the trial court may rely upon an estimate to establish the defendant's guideline offense level, so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996) (internal quotations omitted); see Aplt's Br. filed 06/23/97 at 8. In addition, the sentencing court must consider "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines Manual § 1B1.3(a)(2).

"[A]lthough [the evidence of other drug quantities] may not suffice to establish criminal liability under the reasonable doubt standard, that same evidence may nevertheless support a sentence enhancement under the less rigorous preponderance standard." United States v. Lacey, 86 F.3d 956, 968 (10th Cir. 1996) (citing United States v. Saro, 24 F.3d 283, 286 n.3 (D.C. Cir. 1994)). The Supreme Court has recently confirmed this approach. United States v. Watts, 117 S. Ct. 633, 636 (1997) (per curiam) (Section 1B1.3 "directs sentencing courts

9

to consider all other related conduct, whether or not it resulted in a conviction. . . . In short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted . . . . so long as that conduct has been proved by a preponderance of the evidence.").

It does not appear from the record that Mr. Williams objected below to the drug quantity calculation under Sentencing Guideline § 2D1.1 or to the district court's consideration of relevant conduct under § 1B1.3, either in his written objections to the presentence report or at the sentencing hearing. The failure to object "precludes us from considering the merits of [his] claims unless such claims constitute plain error." United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir. 1991). There is no error here.

We may affirm "on any ground that finds support in the record." United States v. Roederer, 11 F.3d 973, 977 (10th Cir. 1993). There are recorded conversations between Mr. Williams and government informants where Mr. Williams urged a kilogram-level transaction between himself, Mr. Garner, and a third party. There is also testimony concerning Mr. Williams's involvement with Mr. Bond, who was a kilogram-level dealer.

We hold that the record supports the finding that the sales of crack cocaine by and to Mr. Williams during the early 1990's were part of the same course of conduct. There is evidence that regular sales occurred over the course of several

10

years.  There are videotapes and audiotapes to support several of these encounters.  Finally, trial testimony supports the district court's finding that the sales were relevant conduct for sentencing purposes.  The court committed no error by considering the sales as relevant conduct.  See United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994) (holding there was no plain error where record indicated that there "were regular sales of the same drug . . . occurring seventeen months before the convicted offense").

## C.  Expert Testimony

Mr. Williams filed a motion in limine challenging the admission of trial testimony of Timothy McKibben, a government expert who testified that the substances sold by Mr. Williams were in fact cocaine.  Mr. Williams claims that Mr. McKibben's visual analysis could not be validated and that Mr. McKibben should have performed a supplemental computer analysis on the substances.  The district court denied Mr. Williams's motion and admitted the testimony.  We review a trial court's admission of expert testimony for an abuse of discretion.  United States v. Muldrow, 19 F.3d 1332, 1337 (10th Cir. 1994).[2]

---

[2] We recognize that the Supreme Court has granted certiorari to determine the appropriate appellate review standard to be applied to a trial judge's decision to exclude expert testimony.  Joiner v. General Elec. Co., 78 F.3d 524 (11th Cir. 1996), cert. granted, 117 S. Ct. 1243 (1997).  Under either the more stringent standard applied in Joiner, see id. at 529, or under this circuit's abuse of discretion standard, see Muldrow, 19 F.3d at

11

In Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), the Supreme Court stated that under Federal Rule of Evidence 702, "the trial court must determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Muldrow, 19 F.3d at 1337 (quoting United States v. Markum, 4 F.3d 891, 895-96 (10th Cir. 1993)). In Daubert, the Supreme Court suggested several factors that trial courts may consider in making this determination. See Daubert, 509 U.S. at 593. For example, a court may consider (1) whether the proffered technique can and has been tested, (2) whether the technique or theory has been subject to peer review, (3) the known or potential rate of error, and (4) the general acceptance of a technique in the relevant scientific community. Id. at 593-94. Here, the trial court did not abuse its discretion by allowing the testimony.

Mr. McKibben is a forensic chemist who has been qualified as an expert in the area of forensic chemistry many times in both state and federal court. He testified about his education, training, and experience. Mr. McKibben also explained how he tested the controlled substances at issue. He initially performed a series of presumptive color tests on each item in question. The color tests indicated a possibility of the presence of cocaine on each item. Each item was

1337, Mr. Williams's claims fail.

12

then subjected to a specific microcrystalline test. Finally, the items were analyzed by either a gas chromatography mass spectroscopy ("GCMS") technique, an infrared spectroscopy technique, or both. Each item tested positive for cocaine base, commonly known as crack cocaine.

Mr. Williams contends that the government's expert should have performed an additional step and used data processing equipment in conjunction with the infrared spectroscopy results to facilitate spectrum identification and interpretation of the items, rather than merely conduct a visual comparison of the resulting spectra. However, the methodologies employed by Mr. McKibben are well-recognized, and his testimony "established a valid scientific connection to the pertinent inquiry: the identity of the [items. Mr. McKibben] testified about his scientific knowledge, and that knowledge would have assisted the jury in determining the identity of the substance." Muldrow, 19 F.3d at 1337. Accordingly the district court did not abuse its discretion by permitting the testimony under Rule 702.


**D. Sentencing Guidelines**

Mr. Williams also challenges his sentence under 21 U.S.C. § 841(b)(1)(A)(iii), claiming that the distinction drawn between the penalties for possession and distribution of crack and powder cocaine violates the equal

13

protection clause of the Fifth Amendment because the two substances are chemically identical. Mr. Williams relies on the 1994 Annual Report of the United States Sentencing Commission.

"In May 1995, the Sentencing Commission proposed amendments to the sentencing guidelines that would eliminate the penalty differential between crack and powder cocaine." See United States v. Fonts, 95 F.3d 372, 374 (5th Cir. 1996) (per curiam) (citing United States Sentencing Commission, Amendments to the Sentencing Guidelines, 60 Fed. Reg. 25074, 25075-76 (1995)). The amendments would have become effective on November 1, 1995, absent action by Congress. Congress responded, however, and rejected the amendments' attempt to erase the disparity in sentencing. See id. at 374; Pub. L. 104-38, 109 Stat. 334, § 1 (1995).

We cannot ignore Congressional action on this issue. Furthermore, this circuit and every circuit that has addressed the issue has upheld the constitutionality of 21 U.S.C. § 841(b)(1) and United States Sentencing Guideline § 2D1.1 against race-based equal protection challenges. See United States v. Thurmond, 7 F.3d 947, 951 (10th Cir. 1993) (citing cases). Mr. Williams's argument thus fails.

### E. Double Jeopardy

Finally, Mr. Williams appeals the district court's rejection of his claim that the forfeiture of his property to the government, as proceeds of illegal drug transactions, before his sentencing in the criminal proceeding, violated the Double Jeopardy Clause. Mr. Williams's original counsel filed an <u>Anders</u> brief on this appeal. <u>Anders v. California</u>, 386 U.S. 738, 744 (1967) ("[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."). We allowed Mr. Williams to dismiss his counsel on this appeal and to file a brief in support of this claim.

Under the Supreme Court's recent holding in <u>United States v. Ursery</u>, 116 S. Ct. 2135, 2148-49 (1996), civil actions seeking forfeiture of items used in or derived from drug transactions that are the basis of the prosecution are deemed remedial, rather than punitive in nature. Such forfeitures therefore do not implicate the Double Jeopardy Clause. The district court's denial of Mr. Williams's motion was correct.

## III. CONCLUSION

For the foregoing reasons, we conclude that Mr. Williams's arguments lack merit and we AFFIRM the judgment of the district court. The mandate shall issue forthwith.

Entered for the Court,

Robert H. Henry
Circuit Judge