UNITED STATES of America,
Plaintiff–Appellee,

v.

Antonio J. ARMSTRONG,
Defendant–Appellant.

No. 05–5089.

United States Court of Appeals,
Tenth Circuit.

June 5, 2006.

Janet S. Reincke, Tulsa, OK, for Plaintiff–Appellee.

Beverly A. Atteberry, Tulsa, OK, for Defendant–Appellant.

Antonio J. Armstrong, Tulsa, OK, pro se.

Before TACHA, HARTZ, and TYMKOVICH, Circuit Judges.

## ORDER AND JUDGMENT*

HARRIS L. HARTZ, Circuit Judge.

Appellant Antonio Armstrong was indicted in the United States District Court for the Northern District of Oklahoma on one count of possession of a firearm after former conviction of a felony, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2), and one count of possession with intent to distribute five grams or more of cocaine base, *see* 21 U.S.C. § 841. While executing three search warrants, police officers found 12.91 grams of crack cocaine and a handgun in Mr. Armstrong's possession and in two vehicles registered in his name. A jury found him guilty on both counts. On appeal he challenges (1) the denial of his motion for new counsel, (2) the denial of his motion for a continuance, and (3) the admission of testimony by a police officer that the evidence was indicative of his intent to distribute the cocaine rather than to use it personally. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. NEW COUNSEL

Mr. Armstrong made his first request to have his appointed counsel replaced on April 22, 2005, five days before his trial began. The district court denied the request. The day before his trial Mr. Armstrong again asked the court to appoint new counsel for him and the court again denied the request. The following day, immediately before the jury was impaneled, Mr. Armstrong sought to have his counsel dismissed and to proceed *pro se*, saying that he was "left with no choice" when the court denied his request for new

counsel. When asked by the court what his concerns were with the representation he was receiving, he responded:

> Basically, we don't see eye to eye. I can't seem to come to any agreement. She basically tells me I have no chance whatsoever, for, you know, what I'm saying? I didn't want anyone like that representing me that's basically telling me I have no chance. I mean, she's basically quit before the trial even started. You know what I'm saying? That's not even fair to have her represent me.

R. Vol. III. at 9. The court then asked him what, precisely, he wanted his appointed counsel to do that she was not doing, and he responded that he wanted her to challenge the searches that produced the gun and drugs for which he was charged. He maintained that the searches of two residences were illegal as to him because he was not the target of the warrants and just happened to be at the residences when the police conducted the searches. The court carefully explained to him that a search warrant is targeted at a *location* not a particular *person*, and that his presence at the location was sufficient for the officers to search him under the warrant. It also told him that "I've heard nothing to suggest to me that [your attorney] has represented you improperly in any way." *Id.* at 13. Mr. Armstrong then agreed to proceed with his counsel and withdrew his motion to represent himself.

Following the impanelment of the jury, Mr. Armstrong's counsel informed the district court that he wished to change his plea to guilty. In the midst of the plea colloquy, however, he stated that he

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

wished to plead not guilty and renewed his motion for new counsel:

> [S]ome of my rights were to waive my rights to a fast and speedy trial. I still do not feel that she's the proper representation for me, know what I'm saying, and I'm not going to trial with her as my attorney, know what I'm saying? That's just out of the question. And that's my point. I'll waive my right for a fast and speedy trial, whatever it takes, in order to get me a new attorney appointed. But I feel that I'm required and I should have the right representation that I'm comfortable with. I know that you might be comfortable with it, and she's comfortable with it, but I'm not comfortable with it. And I've been rushed into trial. . . . She hasn't even argued. She hasn't tried to defend me in no way, form or fashion, period. So I would like to waive my right to a fast and speedy trial. I'm not going to trial with her. It's simple as that. No disrespect to you or the U.S. attorney or her. I'm just not comfortable with her representing me.
>
> . . .
>
> She done told me several times that I'm nothing but a black man that totes guns [and] sell drugs, and you know that's true. But—this—we don't have—we're not seeing eye to eye. . . . I'm just asking for the rights that you say I can have. . . .
>
> I wrote you a letter, I wrote her a letter stating that I did not want her to be my attorney. You can get me another attorney, if that other attorney don't do the job, then so be it, I have no choice but to go to trial with the second attorney. But I do not want her to be my attorney.

*Id.* at 25–27. Concluding that Mr. Armstrong's objections to counsel arose from a "misunderstanding of what the applicable procedures are and so on," the court acknowledged that he was clearly "not getting along" with counsel but found no ground for granting substitute counsel. *Id.* at 27. The trial proceeded.

We review the district court's denial of a request for new counsel for abuse of discretion. As we stated in *United States v. Porter*, 405 F.3d 1136, 1140 (10th Cir. 2005):

> To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict. Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney[.] [R]ather there must be a total breakdown in communications. To prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.

(internal citations, quotation marks, and brackets omitted). In determining whether the district court's decision was an abuse of discretion, we consider several factors: (1) the timeliness of the defendant's request; (2) the adequacy of the trial court's inquiry into defendant's reasons for the request; (3) whether the conflict was so severe "that it led to a total lack of communications precluding an adequate defense"; and (4) the level of defendant's contribution to the communications breakdown. *Id.*

■ We are satisfied that the district court did not abuse its discretion in refusing Mr. Armstrong's requests for new counsel. First, Mr. Armstrong waited until five days before his case was to be tried

to object to proceeding with his appointed counsel. Second, the district court made extensive efforts, apparently on several occasions, to have Mr. Armstrong explain the reasons for his frustration with counsel, and still could not discern any failing in his counsel's representation.

Third, although there is no question that Mr. Armstrong and his attorney did not get along, it does not appear that this conflict resulted in a "complete breakdown in communication." Mr. Armstrong objected to the decision by his attorney not to file a motion challenging the searches, but it is clear that his objection was based on a misconception of the law. His other dissatisfactions with her representation seem also to stem, as the district court concluded, from inaccurate understandings of procedure and an unrealistic expectation that his counsel should believe in his likelihood of success at trial. There is no evidence that Mr. Armstrong's attorney failed to communicate with him regarding any aspect of the proceedings, and the district court was satisfied that he was receiving competent representation. In this light, we conclude that the evident disagreements between Mr. Armstrong and his appointed counsel were not sufficient to necessitate the appointment of new counsel. *See United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir.1999) (disagreement on strategic decisions insufficient); *United States v. Willie*, 941 F.2d 1384, 1391 (10th Cir.1991) (disagreement over the interpretation of the law insufficient). The district court did not abuse its discretion in denying Mr. Armstrong's request for a new attorney.

## II. CONTINUANCE

On the first day of his jury trial, Mr. Armstrong's counsel moved for a continuance in order to procure a witness who Mr. Armstrong "says ... is an important per-son as to one of these charges" and to file additional unspecified motions. R. Vol. III. at 4. The district court denied the motion on the ground that the witness was unlikely to be found:

> Well, as I say, the efforts can continue to find the woman. Doesn't sound to me like it's likely to occur to find her, but I'm not inclined to defer the trial on the basis of maybe finding someone who may have something to do with this that nobody even knows where she is.

*Id.* at 16.

The denial of a continuance is within the discretion of the district court, and we will find error "only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant." *United States v. Dowlin*, 408 F.3d 647, 663 (10th Cir.2005). We consider several factors in determining whether the court's decision was arbitrary or unreasonable:

> (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; and (4) the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*Id.* (internal quotation marks and brackets omitted).

The district court's denial of Mr. Armstrong's request for a continuance was clearly within its discretion. Mr. Armstrong knew only the name of the witness he wanted to locate, and had no telephone or address information through which to contact her; both his attorney and the government had made unsuccessful efforts to locate her; and the prosecution indicated that the witness knew that a subpoena

had been issued and was attempting to evade service. Furthermore, Mr. Armstrong indicated only that her testimony was "valuable" to his case, R. Vol. III at 5, without providing any information regarding the content of her testimony or its significance to his defense. Upon concluding that the witness was unlikely to be located, the district court was not arbitrary or unreasonable in determining that the trial should proceed.

## III. OFFICER'S OPINION TESTIMONY

Mr. Armstrong's final argument is that the district court erred in admitting the testimony of Tulsa Police Sergeant Thomas Sherman. During two searches, Mr. Armstrong was found in possession of $257 in cash and four baggies of cocaine base totaling 12.91 grams. Sergeant Sherman testified that the quantity and packaging indicated that the drugs were possessed for distribution, not personal use. His testimony was based on his personal experience, including interviews of more than a thousand crack-cocaine addicts and users and hundreds of drug dealers. Mr. Armstrong argues that Sergeant Sherman's testimony was improperly admitted as nonscientific expert testimony.

Because Mr. Armstrong did not raise this objection in district court, we review admission of the testimony only for plain error. *See United States v. Teague,* 443 F.3d 1310, 1314 (10th Cir.2006). (Although Mr. Armstrong objected at trial to Sergeant Sherman's testimony, the objection was on hearsay grounds, which was insufficient to preserve the challenge made on appeal. *See United States v. Ramirez,* 348 F.3d 1175, 1181 (10th Cir.2003) ("The specific ground for reversal of an evidentiary ruling on appeal must be the same as that raised at trial." (internal quotation marks and ellipsis omitted)).) "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights,

and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lopez–Flores,* 444 F.3d 1218, 1222 (10th Cir.2006) (internal quotation marks omitted).

■ There was no plain error in the district court's admission of Sergeant Sherman's testimony. Under Fed.R.Evid. 702, expert opinion testimony may be admissible on any subject that "will assist the trier of fact to understand the evidence or to determine a fact in issue." We have repeatedly affirmed the admission of testimony similar to Sergeant Sherman's. *See, e.g., United States v. Muldrow,* 19 F.3d 1332, 1338 (10th Cir.1994). There may have been defects in Sergeant Sherman's particular testimony, but no error was "plain."

We AFFIRM the judgment of the district court.